David BREWSTER, et al., Plaintiffs,
Appellees,

v.

Michael S. DUKAKIS, et al.,
Defendants, Appellants.

Nos. 81–1688, 81–1915.

United States Court of Appeals,
First Circuit.

Submitted March 18, 1982.

Decided March 24, 1982.

Bruce E. Mohl, Asst. Atty. Gen., Boston, Mass., with whom Francis X. Bellotti, Atty. Gen., Thomas A. Barnico and Carl Valvo, Asst. Attys. Gen., Boston, Mass., were on brief, for defendants, appellants.

Steven J. Schwartz, Northampton, Mass., with whom Robert D. Fleischner, Springfield, Mass., Nonnie S. Burnes and Hill & Barlow, Boston, Mass., were on brief, for plaintiffs, appellees.

John D. Leubsdorf, Boston, Mass., Boston University School of Law, with whom Verne W. Vance, Jr., Scott C. Moriearty, Terry S. Kogan and Foley, Hoag & Eliot, Boston, Mass., were on brief, for Developmental Disabilities Law Center, et al., amici curiae.

Patricia E. Hennessey, New York City, on brief for Children's Defense Fund, et al., amici curiae.

Before COFFIN, Chief Judge, and CAMPBELL and BOWNES, Circuit Judges.

COFFIN, Chief Judge.

Defendants-appellants, various members of the executive branch of the Commonwealth of Massachusetts, appeal an order of the United States District Court for the District of Massachusetts enforcing a consent decree to which they are signatories. Although we avoid a detailed description of the circumstances giving rise to the order, the provisions of the order, and their modification by a second order, a brief review is necessary to set the stage for our discussion of this appeal.

The consent decree was the result of the negotiated settlement of a suit filed as a class action in the district court by nine residents of the Northampton State Hospital who claimed that the Commonwealth's programs to treat mentally disabled persons at the hospital violated their constitutional and statutory rights to less restrictive treatment through nonhospitalization programs. In the consent decree the Commonwealth—represented by the Governor, the Attorney General and his assistants, the Secretary of Administration and Finance, the Secretary of Human Services and the Commissioner of the Department of Mental Health—agreed to undertake specific programs that would provide a comprehensive system of community mental health and retardation services by offering less restrictive residential facilities and nonresidential treatment and support programs. Although many of the programmatic provisions are stated as absolute promises to provide the specified services, the consent decree also states that "defendants will use their best efforts to insure the full and timely financing of this Decree".

In July, 1981, two and one-half years into the life of the consent decree, the Massachusetts legislature appropriated approximately five million dollars less than appellants' budget request of 53 million dollars for the consent decree program. The Governor subsequently filed a supplemental budget request to try to obtain the money needed to comply fully with the decree. In early August plaintiffs-appellees, awaiting action on the supplemental request, filed a motion for a temporary restraining order and preliminary injunction to prevent appellants from curtailing the consent decree programs in light of the reduced appropriation, a process appellants had already initiated. Appellees claimed that *any* reductions in program violated the consent decree. On September 15, 1981, the district court issued an order directing appellants in effect to proceed with implementation of the consent decree programs as though there were no shortfall in funding and to submit to the Court Monitor for the consent decree a report of all efforts taken to obtain full funding from the legislature.

Questioning whether the district court could order funding of programs contrary

to legislative desire, this court stayed the order pending appeal. On December 23 the district court modified its order and issued a new memorandum to make clear that it was not ordering the legislature to appropriate money but instead was requiring appellants to make their best efforts to obtain full funding. Because it found that appellants had not made their best efforts to date, it ordered them to continue to conduct programs at full funding levels until best efforts either produced results or were proven unsuccessful, in which event appellants were ordered to return to the court with a request for modification of their obligations under the terms of the consent decree. Pending our review of the September 15 and December 23 orders, this court on January 12 stayed the portion of the order requiring continued spending at full funding levels, and modified that section of the order which directed appellants to make their best efforts by increasing the specificity of appellants' obligation to make best efforts and to report to the court on those efforts.

We fully appreciate the delicate nature of this situation. By committing the Commonwealth to fulfilling certain responsibilities, appellants induced appellees to drop their suit. The district court, having approved the agreement, must ensure its continued execution, but is faced with the political reality that the legislature has refused to fund the consent decree to the extent requested by appellants.[1] Although the district court has recognized that the legislature is not subject to its injunctive power, it has sought to protect appellees' rights under the decree by prohibiting appellants from cutting consent decree programs until they have proven that their best efforts to obtain full funding are unavailing.

Proceeding to a review of the district court's orders, we first note that paragraph 6 of the consent decree provides that the district court retains jurisdiction "to enable any party to apply at any time for such further orders as may be necessary or appropriate for the interpretation, implementation, enforcement, or modification of the terms of this Decree". Appellees in this instance were not seeking modification of the decree, which would have resulted in a permanent, facial change in the decree. *See, e.g., System Federation No. 91 v. Wright,* 364 U.S. 642, 647, 81 S.Ct. 368, 371, 5 L.Ed.2d 349 (1961). *See generally Delaware Valley Citizens' Council for Clean Air v. Pennsylvania,* No. 81–2308 (3d Cir. Mar. 1, 1982). Nor were they applying for enforcement through contempt proceedings as is customary when a party believes that the provisions of a consent decree have been violated. *See, e.g., Commodity Futures Trading Comm'n v. Premex, Inc.,* 655 F.2d 779, 782 (7th Cir. 1981); *Interdynamics, Inc. v. Firma Wolf,* 653 F.2d 93, 97 (3d Cir. 1981); *New York State Ass'n for Retarded Children v. Carey,* 631 F.2d 162, 163 (2d Cir. 1980).

Rather, appellees took an intermediate course by seeking clarification of duty and enforcement in an undifferentiated request for injunctive relief. Because an action for enforcement (i.e., contempt) would entail procedures and standards of proof not applied in this instance, we cannot view the resulting court order as an enforcement order. Instead, we deem the order to have been issued under the court's power to interpret the decree, a power clearly reserved to the court by the terms of the decree. On the periphery of the court's power to interpret is also a limited power to issue injunctive relief which may be used to protect rights and enforce duties once they have been clarified. *Cf. Delaware Valley Citizens' Council for Clean Air v. Pennsylvania, supra,* slip op. at 8 (after finding violation of consent decree, court issues injunction requiring specific implementing action not contained in decree). Although we find

---

1. The funding problem continues as of the writing of this opinion. The legislature has approved a three million dollar supplemental appropriation, but that amount is insufficient to meet the needs of the consent decree programs at issue here because it must be allocated among several other areas where the state has obligations under court orders. We are not aware that previously appropriated funds have been reallocated to allow full funding of the *Brewster* consent decree programs.

that the court partially abused its power in this instance, we recognize that the use of this limited injunctive power is appropriate when, as here, unusual and possibly unforeseen circumstances have required interpretation of the decree, some relief or enforcement may be in order, and yet the clarity of obligation necessary for enforcement through contempt has not yet been established.[2]

█ In the present situation, the district court was correct insofar as it interpreted the consent decree to require appellants to make good faith efforts to secure funding before making cuts in services. The terms of the consent decree clearly state that appellants' obligation is only to exert their best efforts to fully fund the consent decree programs by submitting budget requests, allocating funds appropriately among programs, and by efficiently managing the financial procedures involved in implementing the programs.[3] Although the programmatic provisions of the consent decree are often phrased as mandatory obligations of the state, we must interpret the provision requiring best efforts to fund these obligations as an overriding provision that modifies the apparently mandatory nature of these obligations. The best efforts provision follows all of the substantive, programmatic provisions, and must be read as a modification of each because it relates to a common denominator essential to the implementation of each of those provisions—

funding.[4] Consequently, the court was not abusing its discretion when it interpreted the consent decree to require best efforts and ordered appellants to make best efforts to achieve full funding.

█ The court also found that appellants had not made best efforts as of the time of its ruling and imposed additional responsibilities on appellants as a result in order to implement the decree. We cannot say the district court lacked a sufficient basis to find that appellants had not made best efforts to obtain full funding as of December 23. There is enough evidence on the record to show that appellants might have persevered more than they did to obtain full funding. Nor did the court abuse its discretion by ordering appellants to undertake certain specific efforts to obtain funding and to report on their efforts to the Court Monitor. While attempting to implement the consent decree in the context of the peculiar circumstances that had evolved, the court was justified in reviewing appellants' efforts to date, and, finding them lacking, in imposing additional, consistent burdens on appellants to ensure implementation of the decree. Consequently, paragraphs 10 and 11 of the December 23 order, as modified by this court's order of January 12, stand in effect.

The district court imposed other obligations on appellants, however, that we feel exceeded the scope of the court's power to interpret and implement the decree. Paragraphs 1 through 9 of the December 23

2. We are wary of the fact that this protective injunctive power is, in ultimate effect, not too different from the court's power to enforce the consent decree, and that parties might seek enforcement through injunction, which requires only a showing of a likelihood of success, rather than enforcement through contempt, which requires more rigorous proof of a breach. Accordingly, the proper use of injunctive relief must be restricted to a power exercised as an incident of the court's power to interpret the decree in the face of unusual circumstances.

3. The provision of the consent decree states in part that:
    "The defendants will use their best efforts to insure the full and timely financing of this Decree, including: submission of appropriate budget requests to the Massachusetts Gener-

al Court; allocation of sufficient funds to insure that all existing and new programs meet the minimum standards therein; full allocation of funds appropriated for services during the fiscal year; allotments of appropriated funds as needed ...."

4. This interpretation is buttressed by paragraphs 9 and 11 of the consent decree that state that if appellants have any budgetary or programmatic reason to modify the community residential alternatives, nonresidential programs, and administrative management services, appellees are to have the opportunity to object to those modifications in advance. By inclusion of these terms, both parties would seem to have recognized that budgetary considerations may at times force deviation from the programs as outlined in the consent decree.

order generally require appellants not only not to cut down any FY '82 programs (¶ 1); but to develop, submit to bidding, contract, and fund all community programs originally planned for FY '82 (¶¶ 3, 6); promptly fill all authorized personnel positions and convert certain state positions into contract staff (¶¶ 4, 7); notify all providers of these requirements (¶ 2); do all this without reducing other programs (¶¶ 5, 8); and prepare all plans and documents necessary to accomplish the foregoing (¶ 9). Although the court can order appellants to do what they are required to do under the terms of the consent decree—to make best efforts—the court cannot require appellants to go beyond what their good faith professional best efforts can reasonably be expected to accomplish.[5] We therefore vacate paragraphs 1 through 9.

We also vacate paragraph 12 of the December 23 order which requires appellants to submit a motion for relief from the order in the event that their best efforts do not produce the funding necessary to fully implement the consent decree. Because the order, as modified by this ruling, no longer imposes a mandatory duty on appellants to continue conducting programs at full funding levels, it is no longer necessary to provide a mechanism for relief from that duty.

The implementation of the consent decree in this particular situation requires the parties continually to reassess their respective rights and obligations under the decree as the circumstances, such as the availability of funding, evolve. The court has the power both to interpret the consent decree in light of the changing circumstances and to enforce it through contempt proceedings. Given the fluidity of this situation, we stress that clarity of obligations must be a prerequisite to enforcement through contempt proceedings. In the future the separate objectives of interpretation and enforcement should be clearly kept in mind in framing pleadings and structuring court proceedings.

Paragraphs 1 through 9 and paragraph 12 of the district court's order of December 23 are vacated, and paragraphs 10 and 11, as modified by this court's order of January 12, are affirmed.

*So ordered.*

---

5. We do not intend to foreclose the possibility that some extraordinary circumstances—such as where time is of the essence, the party seeking relief has shown a substantial likelihood of success, and the opposing party has acted in bad faith—might justify imposition of interim obligations significantly beyond the terms of the consent decree in order to preserve the rights of a party pending final interpretation of the decree or enforcement through contempt. Such extraordinary circumstances do not exist in this instance.