Chartier v. Shalala, Secretary          CV-94-458-L    02/21/95

**THE UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF NEW HAMPSHIRE**


Mark Chartier

   v.                                          #C-94-458-L

Donna L. Shalala,
 Secretary of Health
 and Human Services


## ORDER


Plaintiff Mark Chartier seeks review, pursuant to 42 U.S.C. §405(g), of a final determination of the Secretary of Health and Human Services (HHS) denying his application for Social Security benefits.  Currently before the court are Plaintiff's Motion for Order Reversing Decision of the Secretary (Doc. 5) and Defendant's Motion for Order Affirming the Decision of the Secretary (Doc. 6).  For the reasons set forth below, the plaintiff's motion is denied and the defendant's motion is granted.


BACKGROUND

Plaintiff, Mark Chartier, is a 34 year-old, high school graduate, whose past relevant work experience involves truck driving, installing commercial air conditioning and heating and operating machines.  Tr. 47, 359-360.

Plaintiff last worked on October 31, 1989.  On this day he fell from a ladder injuring both knees.  Tr. 48-49.  Previous to this injury, plaintiff had suffered a back injury.  Tr. 49.  The

initial injury from the October 31st fall was to the left knee and the plaintiff received medical treatment for the injury. Tr. 148. Persistent pain and increased swelling forced the plaintiff to consult Dr. James M. Shea, an orthopaedic surgeon, on November 10, 1989. Tr. 160, 167. At that time, Dr. Shea's diagnosis was internal derangement of the left knee. Tr. 151. The plaintiff was admitted for arthroscopic surgery to the knee on November 15, 1989. Tr. 152.

Plaintiff continued to receive treatment from Dr. Shea and mild progress was noted with the left knee over the course of the following month. Tr. 161. As early as five days following surgery, however, an increasing problem arose in the right knee. Tr. 161. By January 11, 1990, both knees were exhibiting increased problems and pain. Tr. 162. Throughout the spring of 1990, plaintiff continued to have visits with Dr. Shea. On March 14, 1990, plaintiff underwent arthroscopic surgery in his right knee due to increasing difficulties. Tr. 164. In April, 1990, Dr. Shea indicated that plaintiff would be unable to return to his past relevant work of heating and air conditioning. Tr. 165.

On April 16, 1990, plaintiff's back problem flared to disability proportions and he was forced to see Dr. Shea on an emergency basis. Tr. 165. Dr. Shea noted a previous diagnosis of spondylolysis at L5-S1 by a Dr. Wachs and confirmed that diagnosis. Tr. 165.

By May, 1990, plaintiff had become so discouraged with progress concerning his knees and the reliance on pain medication

2

that he sought a second opinion from Dr. Thomas V. Moser, also an orthopaedic surgeon. Tr. 53. Dr. Moser diagnosed chondrolomalacia in both the right and left knees and ACL deficit in the left knee. Tr. 170. Although the plaintiff was prescribed a steroid anti-inflammatory medication, his condition worsened.

On June 22, 1990 plaintiff was referred to Dr. Preston Clark. Tr. 172. On July 9, 1990, Dr. Clark, admitting a personality conflict between himself and the plaintiff, sent a report of examination to Dr. Moser, indicating he did not expect further involvement in the case. Tr. 175.

On August 21, 1990, plaintiff consulted orthopaedic surgeon Dr. Mark Piscopo. Tr. 180, 202. Dr. Piscopo noted the plaintiff's extensive history of both bilateral arthroscopic surgery and "extensive physical therapy" without improvement. Tr. 180. Dr. Piscopo prescribed Darvocet for the plaintiff. Tr. 181. Following an unsuccessful MRI, a left knee arthroscopy was performed in September, 1990, followed once again by physical therapy. Tr. 181-182. While some improvement in the left knee was noted with physical therapy, the claimant's progress was "compromised" as the physical therapy aggravated plaintiff's long standing back problem. Tr. 183.

By January, 1991, the plaintiff reported increased pain and difficulty standing. Tr. 185. Additionally, continued physical therapy for his back had not alleviated the pain. Tr. 185. Plaintiff continued to comply with Dr. Piscopo's directions

concerning physical therapy, but as improvement was absent, the physical therapy was terminated in February, 1991.  Tr. 187.

On April 23, 1991, plaintiff's condition was so severe that Dr. Piscopo requested a review by a panel of orthopaedic surgeons.  The surgeons diagnosed posterolateral rotary instability of the knee and determined that the pain experienced by the plaintiff was consistent with this finding.  Tr. 189.

By June, 1991, plaintiff's condition had worsened and Dr. Piscopo decided to initiate surgical reconstruction.  Tr. 190. At the same time, increasing effusion of the right knee was taking place.  Tr. 191.  Although reconstruction of the left knee was performed at the end of September, 1991, the plaintiff continued to experience severe pain extending from his knee down to his foot.  Tr. 198.  With the increasing of pain and the continued giving out of his knee, Dr. Piscopo felt that additional consultation from other specialists was warranted. Tr. 201.  In March, 1992, after review of plaintiff's condition, specialist Dr. William W. Tomford, of Massachusetts General Hospital determined that plaintiff is "probably . . . currently disabled."  Tr. 277.

Plaintiff filed for social security disability benefits on March 24, 1992.  He was denied those benefits on July 27, 1992 and again on reconsideration on August 4, 1992.  A timely request for a hearing was filed and the hearing was held before Administrative Law Judge (ALJ) Robert J. Klingebiel on May 3, 1993.

4

In assessing the issue of whether the plaintiff is entitled to a period of disability and to disability insurance benefits under Sections 216(i) and 223 of the Social Security Act, the ALJ concluded that "claimant is not entitled to a period of disability or disability insurance benefits under sections 216(i) and 223, respectively, of the Social Security Act." Tr. 25.

Plaintiff now contends that the decision of the Secretary should be reversed. In support of this contention, plaintiff asserts that the Secretary's decision, through the ALJ, concerning his limitations and credibility is not based on substantial evidence. Plaintiff also maintains that the opinion of the vocational expert (VE) does not constitute substantial evidence.

DISCUSSION

An individual seeking social security disability benefits will be considered disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less that 12 months." 42 U.S.C. § 416 (i)(1)(A)(Supp. V 1981); 42 U.S.C. § 1382c(a)(3)(A) (1976); See Faford v. Shalala, 856 F. Supp. 13 (D.Mass. 1994). The Secretary of Health and Human Services will find a claimant disabled only if the claimant's

> physical or mental impairment or impairments are of
> such severity that he is not only unable to do his

previous work but cannot, considering his age, edu-
cation, and work experience, engage in any other kind
of substantial gainful work which exists in the
national economy, regardless of whether such work
exists in the immediate area in which he lives, or

whether a specific job vacancy exists for him, or whether he
would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (1994).

The Secretary utilizes a five-step sequential evaluation set

forth in 20 C.F.R. §§ 404.1520, 416.920 in considering disability

claims.  This five-step procedure is summarized as follows:

> First, the Secretary considers whether the claimant is
> currently engaged in substantial gainful activity.  If
> he is not, the Secretary next considers whether the
> claimant has a "severe impairment" which significantly
> limits his physical or mental ability to do basic work
> activities.  If the claimant suffers such an impair-
> ment, the third inquiry is whether, based solely on
> medical evidence, the claimant has an impairment which
> is listed in Appendix 1 of the regulations.  If the
> claimant has such an impairment, the Secretary will
> consider him disabled without considering vocation
> factors such as age, education, and work experience;
> the Secretary presumes that a claimant who is afflicted
> with a "listed" impairment is unable to perform
> substantial gainful activity.  Assuming the claimant
> does not have a listed impairment, the fourth inquiry
> is whether, despite the claimant's severe impairment,
> he has the residual functional capacity to perform his
> past work.  Finally, if the claimant is unable to
> perform his past work, the Secretary then determines
> whether there is other work which the claimant can
> perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).

The scheme of the Act places a very heavy initial burden on

the claimant to establish the existence of a disabling

impairment.  Bowen v. Yuckert, 482 U.S. 137, 146-47 (1987);

6

Santiago v. Secretary of HHS, 944 F.2d 1, 5 (1st Cir. 1991).  To meet this burden, the claimant must prove that his impairment prevents him from performing his former type of work.  Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985) (citing Goodermote v. Secretary, 690 F.2d 5, 7 (1st Cir. 1975)).  The claimant is not required to establish a doubt-free claim; the initial burden is satisfied by the usual civil standard, a "preponderance of the evidence."  See Paone v. Schweiker, 530 F. Supp 808, 810-11 (D.Mass 1982); see also 1 Unemployment Insurance Reporter (CCH) 12, 679 (April 15, 1985).  Further, the claimant must show a "medically determinable" impairment, and only in a rare case can this be shown without medical evidence.  Thompson v. Cellophane, 556 F.2d 616, 618 (1st Cir. 1977) (citing 42 U.S.A. § 423(d)(1)(A)); Ramirez v. Secretary of Health, Education and Welfare, 528 F.2d 902, 903 (1st Cir. 1976).

Once a plaintiff has shown an inability to perform his previous work, the burden shifts to the Secretary to show that there are other jobs in the national economy which the claimant can perform.  Vasquez v. Secretary of Health and Human Services, 683 F.2d 1 (1st Cir. 1982).  In assessing a claim for disability, the Secretary shall consider objective and subjective factors, including the following; (1) objective medical facts; (2) claimant's subjective evidence of pain and disability as testified to by the claimant or other witness; and (3) the claimant's education background, age and work experience.  See e.g., Avery v. Secretary of Health and Human Services, 797 F.2d

7

19 (1st Cir. 1986); Goodermote, 690 F.2d at 6. If the Secretary shows the existence of such jobs, then the overall burden remains with the claimant. Hernandez v. Weinberger, 493 F.2d 1120, 1123 (1st Cir. 1974); Benko v. Schweiker, 551 F. Supp. 698, 701 (D.N.H. 1982).

A finding by the Secretary that a claimant has not shown disability is conclusive if supported by substantial evidence. 42 U.S.A. §§ 405(g), 1383(c)(3); Ortiz v. Secretary of HHS, 955 F.2d 765, 769 (1st Cir. 1991). Substantial evidence is:

> "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). "[I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." NLRB v. Columbian Enameling & Stamping Co., 306 U.S. 292, 300 (1939). This is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusion from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.

Consolo v. Federal Maritime Com., 383 U.S. 607, 620 (1966) (citations omitted).

Although it is for the Secretary to weigh and resolve conflicts in the evidence, Burgos Lopez v. Secretary of Health & Human Services, 747 F.2d 37, 40 (1st Cir. 1984)(citing Sitar v. Schweiker, 671 F.2d 19, 22 (1st Cir. 1982)), the court is empowered to scrutinize the record as a whole and determine the reasonableness of the decision. Ortiz, 955 F.2d at 769. Upon review, a court must be content that the claimant has had a "full hearing under the Secretary's regulations and in accordance with the beneficent purposes of the Act." Gold v. Secretary of

8

Health, Education and Welfare, 463 F.2d 38, 43 (2d Cir. 1972);

Hankerson v. Harris, 636 F.2d 893, 895 (2d Cir. 1980).

With the above principles in mind, we review the administrative transcript and plaintiff's allegations supporting his claim for reversal.

In performing a threshold review, this court is cognizant that the ALJ, in complying with the requirements of the Act, inquired whether Mr. Chartier is currently working and whether an impairment significantly interferes with his ability to perform prior work activities. Although it is unnecessary to belabor every step of the ALJ's decision, the court is nonetheless convinced that the determination that the "claimant has not engaged in substantial gainful activity since October 31, 1989" and he is "unable to perform his past relevant work as a machine operator, truck driver and HVAC mechanic and installer" is supported by substantial evidence. Tr. 23.

The next step for the ALJ was to determine whether the plaintiff's impairment was so severe as to classify the plaintiff as automatically disabled. Here again, the court concludes that the ALJ's finding that "the medical evidence establishes that the claimant has severe posterolateral injuries to both knees, but that he does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4" is supported by substantial evidence. Tr. 23. Apposite to this conclusion, the reports and conclusions from the various physicians do not conclusively

9

indicate that plaintiff's condition resembles the level of motor losses, muscle weaknesses, sensory or reflex losses and limitations which are indicative to the conditions listed in Appendix 1, Subpart P, Regulations No. 4.  Tr. 129-208, 257-290.

Pertinent to the issues now presented by plaintiff, the ALJ next considered whether the plaintiff's impairments, considering age, education, and work experience, were of such a magnitude as to preclude him from engaging in other forms of substantial and gainful employment.  42 U.S.C. 423(d)(2)(A).

I.   ALJ's decision concerning plaintiff's limitations and credibility is not based on substantial evidence.

Plaintiff contends the conclusions resulting from the ALJ's review of medical evidence and plaintiff's impairments are not supported by substantial evidence and therefore the ALJ erred in determining plaintiff is "not disabled."  To support his insubstantial evidence argument, plaintiff offers four issues of contention.

A.   Sufficiency of medical evidence

First, plaintiff asserts that the ALJ failed to consider crucial medical evidence and testimony directly impacting upon the plaintiff's ability to work.

In reviewing the evidence and transcript, the court is satisfied that the ALJ, in considering plaintiff's condition, not only gave appropriate, but in fact gave substantial consideration to plaintiff's allegations of pain.  In support of this

10

conclusion, the court notes that according to the administrative hearing transcript both the plaintiff's lawyer and the ALJ questioned the plaintiff in depth concerning pain and medication taken. Tr. 50-53, 62-63. Additionally, the ALJ gave significant consideration and weight to medical opinions, reports and evaluations, conducted by a host of doctors, which shed considerable light on plaintiff's condition. The ALJ's conclusion, based on the aforementioned information, was that although the plaintiff "could not return to past forms of work, [he] could greatly benefit from participating in rehabilitation programs and strict strengthening programs as well as from using anti-inflammatory medication." Tr. 20. Therefore, based on the aforementioned evidence, the ALJ's conclusions regarding medical reports and plaintiff's condition is adequately supported.

B.  Consideration of x-ray films

The second argument the plaintiff offers to support his "insubstantial evidence" assertion is that the ALJ improperly referred to and relied on x-rays which were compiled at the time of plaintiff's accident. Plaintiff avers that the reference by the ALJ to the dated x-rays was meaningless in that a myriad of complications arose since those x-rays were performed. Plaintiff's contention appears to be directly contradicted by findings offered by the ALJ in his final decision.

Although the ALJ does refer to x-ray films that were the product of tests performed on the date plaintiff was initially

11

injured, there is no indication that the ALJ considered the xrays compelling or of fundamental importance to his ultimate conclusion of not disabled. Furthermore, in his decision the ALJ makes significant reference to x-rays conducted at later dates. For example, the ALJ's decision indicates that as late as June 4, 1992, Dr. William Shea conducted x-rays on plaintiff. The ALJ incorporated Dr. Shea's findings into his final decision by noting that these tests indicate that there was "adequate joint space without any evidence of deformity or increased sclerosis." Tr. 20. Exhibit 20.

Simply put, the contention that the ALJ improperly relied upon x-rays performed on the date of injury is without merit. It is apparent in his decision that the x-rays, all of which were performed over the course of years, presented a means by which the ALJ could consider, by comparison, plaintiff's limitations and medical problems. None of the x-rays, by themselves or even in concert, provided the linchpin for the ALJ's ultimate conclusion.

C.   Plaintiff's complaints concerning pain and medication

In attempting to provide a third argument relating to his contention that the decision of not disabled is not supported by the evidence, the plaintiff alleges that the ALJ erred in his final decision by not properly considering the full extent of plaintiff's pain, injury and complications as well as the medical evidence surrounding plaintiff's condition. Specifically,

12

plaintiff maintains the ALJ "mischaracterized" his testimony concerning medication side effects.  Plaintiff also avers that the ALJ was not objective in his review of the testimony and medical evidence, and as a consequence plaintiff's testimony was passed off as "not credible."

As this court has the limited ability of determining whether there is substantial evidence to support the Secretary's decision of not disabled, Smith v. Schweiker, 520 F. Supp. 27, 34 (D.N.H. 1981), the court is unwilling to subscribe to the argument that the decision denying disability benefits is unsupported by medical evidence and is contrary to the testimony offered by the plaintiff.  Although the plaintiff is correct in that the ALJ may not have found his testimony entirely credible, there is ample explanation in the final decision for this illation.  As a brief example, the ALJ reviewed the reports and evaluations conducted by doctors Shea, Clark, Piscopo, Biletch, Warren and Tomford.  It is apparent from his final decision that the reports and evaluations offered by these doctors did not comport with plaintiff's testimony.  Further, in substantiating his decision of giving greater weight to the doctor's reports and medical evidence, the ALJ noted in his final decision that

> [t]reating physicians as well as reconstructive orthopedic specialists have limited his abilities only with respect to prolonged squatting or kneeling.  While all of his physicians have agreed that the claimant could not return to his past work because of the climbing and crawling that was involved, they have indicated that the claimant would benefit from participating in rehabilitation programs and strict strengthening programs as well as using anti-inflammatory medications.

13

\*                              \*                              \*

> The functional capacity reported by the treating
> physicians clearly is not consistent with the
> claimant's testimony that he is unable to sit for
> longer than one-half hour or walk for more than 10 to
> 15 feet.  In view of the claimant's activities, the
> limited restrictions placed upon him by treating
> sources, the objective findings of record and the lack
> of any serious side effects from the medication used
> for relief of pain, the undersigned finds that the
> claimant's allegation of inability to work because of
> pain are not entirely credible.

Tr. 20-21.

Although plaintiff is seemingly troubled that greater reliance was placed on the physicians' opinions than on his own opinion and complaints, 20 C.F.R., § 404.1527 and § 416. 927 emphatically provide that a treating physician's opinion <u>may</u> be entitled to controlling weight, but <u>only</u> when the opinion is <u>well-supported</u> by medically acceptable diagnostic techniques.

As is the case here, as long as the ALJ articulates sufficient reasons for questioning the credibility of a plaintiff, the ALJ is within his discretionary power to make determinations regarding plaintiff's testimony.  <u>Da Rosa v. Secretary of Health and Human Services</u>, 803 F.2d 24, 26 (1st Cir. 1986).  <u>See</u> <u>Ortiz</u>, 955 F.2d at 769.

D.   <u>Consideration of plaintiff's back problems</u>

As the final block to completing his foundation questioning whether there is substantial evidence to support the ALJ's decision, plaintiff maintains the ALJ erred by failing to factor into the residual functional capacity assessment certain

14

allegations of back problems.  Specifically, the plaintiff explains the significance of his back problem by emphasizing that on April 16, 1990 his back problem "flared to disability proportions" (Doc. 5) and he was forced to see a doctor on an emergency basis.

However, as the defendant correctly points out, a claimant in a Social Security matter bears the initial responsibility of presenting medical evidence of a severe impairment and functional loss associated with the condition.  20 C.F.R. §§ 404.1508, 404.1512, 404.1521 and 404.1527.  In short, plaintiff proffered little medical evidence at the hearing supporting a contention that he is unable to perform basic work activity because of his back problems.  In fact, the administrative transcript provides indications that plaintiff did not consider his back problem to be of major consequence or of a disabling degree.

Dialogue between ALJ and plaintiff.

Q    Okay. If, if we could just eliminate the problem with your knees today, do you feel you'd be able to work with your back"

A    Yeah, I do.

Q    You do.

A    I do.

Tr. 55-56.

Absent any substantial evidence by plaintiff that his back problems constituted a limitation on his ability to perform work related functions, the court opines that the ALJ was not com-

15

pelled or even obligated to incorporate plaintiff's back condition in the residual functional capacity finding. <u>Bowen v. Yuckert</u>, 482 U.S. 137 (1987); <u>Gonzalez-Ayala v. Secretary of Health and Human Services</u>, 807 F.2d 255 (1st Cir. 1986).

In light of the well-reasoned conclusion of the ALJ, plaintiff's contentions that the ALJ improperly considered certain evidence, inappropriately failed to consider other evidence, failed to apply certain evidence to the requirements of the Act and failed to adequately explain his reasons supporting his conclusion are simply without merit. Reflecting on the aforementioned considerations, the court is content that the ALJ properly determined that substantial evidence exists to support the conclusion that Mr. Chartier's exertional and non-exertional impairments do not constitute a disability under the guidelines of the Social Security Act. <u>Geoffroy v. Secretary of Health and Human Services</u>, 663 F.2d 315, 319 (1st Cir. 1981).

II.  The opinion of the Vocational Expert does not constitute substantial evidence.

Plaintiff maintains that the portion of the ALJ's decision relying on the testimony of the VE is fundamentally flawed in that given the ability of the plaintiff to perform work only in the "sedentary" range, the ALJ improperly considered plaintiff capable of performing jobs in the "light" range. Specifically, plaintiff maintains that two jobs, the cashier and parking lot attendant positions, identified by the VE are classified as light

16

positions and therefore do not comport with the sedentary ability offered by the ALJ.

At the outset, the court is cognizant of the defendant's assertion that plaintiff's issue involving the vocational expert's testimony was not presented to the Secretary and, thus, should not now be considered. In light of that assertion, the court is tempted to refrain from addressing issues that were not properly pled. However, for the sake of clarification and completeness and because this court realizes the gravity of the situation, the court will venture across the line of restraint in order to review and briefly address plaintiff's allegations.

Although plaintiff may be correct in his contention that the cashier and parking lot attendant positions are jobs incapable of performance by an individual having sedentary capabilities, the mistake by the ALJ is not of the nature warranting a reversal or remand.

A portion of the scheme of a social security review places a very substantial burden on the Secretary to show that, in cases where the plaintiff is unable to perform his previous work, there are still other jobs in the national economy which the plaintiff is able to perform. See Vasquez, 683 F.2d 1. In meeting this burden, the Secretary must establish the existence of a signif-icant number of jobs. However, the burden does not require the Secretary to establish a likelihood that a claimant will actually be hired into one of the positions. See 42 U.S.C. § 423(d)(2)(A) (1994).

17

In the case at hand, the ALJ fully met this burden by identifying other jobs which fall within the sedentary range. For example, an escort vehicle driver, surveillance system monitor, test desk supervisor, and heating and ventilation drafter are all within the sedentary range. In conjunction with identifying these positions, the VE also provided numbers which adequately establish that these jobs are available in significant numbers in the regional or national economies. Tr. 24. See Manchester v. Sullivan, C-90-481-L (D.N.H., March 28, 1991). Thus, although the ALJ may have improperly referred to two jobs incapable of performance by the plaintiff given his residual functional capacity, the mistake turns out to have no consequence or impact on the final decision.

Related to the testimony offered by the VE, plaintiff also contends that the VE improperly relied on outdated figures in forming her conclusions. Specifically, plaintiff maintains that according to a 1994 report, five of the six named positions reported by the VE at the hearing are now no longer available in New Hampshire. Plaintiff offers that instead of relying on current projections during the hearing on May 3, 1993, the VE relied on " . . . 1990 census figures . . . ." Doc. 5. Tr. 74.

The court considers it rather elementary that on the date of the hearing, May 3, 1993, and on the date of the ALJ's final decision, January, 1994, neither the ALJ nor VE was obligated to rely on a report not yet in existence. Thus, as plaintiff concentrates his "outdated data" argument on a third quarter of

18

1994 report (Employment Statistics Quarterly), plaintiff is in fact the one who relies on improper or inappropriate information. As such, plaintiff has failed to allege any facts to support a showing that the VE's testimony was not adequately supported. Additionally, although the VE did testify that her information derived from 1990 census figures, she did state that the figures are updated quarterly and are based on U.S. Department of Labor reports and state reports. Tr. 74. The court has no reason to surmise that the numbers and statistics offered by the VE were not up-to-date at the time of the hearing.

In sum, the court is not persuaded by plaintiff's arguments that the decision of the ALJ is fundamentally defective as a result of reliance on flawed testimony offered by the VE.


CONCLUSION

The court has empathy for Mr. Chartier, for he has no doubt suffered with certain conditions and impairments for some time. However, this court is mindful of the fact that the allegations of error, which the plaintiff now maintains, do not rise to a level warranting reversal or remand.

In light of the foregoing discussion concerning the ALJ's careful review and prudent application, as well as the considerations and analysis conducted by the VE, plaintiff's Motion for Order Reversing Decision of the Secretary (Doc. 5) is

19

denied, and defendant's Motion for Order Affirming the Decision

of the Secretary (Doc. 6) is granted.

February 21, 1995


                                                 _____
                                                 Martin F. Loughlin
                                                 Senior Judge

John R. Mason, Esq.
David Broderick, Esq.