Ball v. Shalala, Secretary          CV-94-350-L    04/24/95

**THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**


Albert L. Ball


       v.                                        #C-94-350-L

Donna E. Shalala, Secretary
 of Health & Human Services


<u>**ORDER**</u>


Plaintiff, Albert Ball, seeks review, pursuant to 42 U.S.C. § 405(g), of a final determination of the Secretary of Health and Human Services (HHS) denying his application for Social Security benefits. Now for the court's consideration is plaintiff's motion for order reversing the decision of the Secretary. For the reasons set forth below, plaintiff's motion is granted.


BACKGROUND

On February 12, 1987 plaintiff, Albert L. Ball, sustained an injury to his lower back in the course of his employment as a truck driver for Allen-Rogers Corporation. The injury occurred while Mr. Ball was using a two-by-four to assist in moving a fork lift which had become hung up between the lip of the loading dock and Mr. Ball's truck. When the two-by-four slipped, Mr. Ball fell in a twisting motion into a cement block wall and

immediately felt the onset of a burning pain in his left lower back.

Mr. Ball received treatment for his injury at the Mary Hitchcock Memorial Hospital in Hanover, New Hampshire on February 12, 1987. The initial diagnosis was "low back pain secondary to muscular strain." The treatment that was provided for the injury included bracing, bed rest, pain medications and anti-inflammatory medications. However, when Mr. Ball's condition did not significantly improve after several weeks, he began treatment with Christopher Walton, M.D., an orthopedist at Mary Hitchcock Memorial Hospital. In addition to the bracing and anti-inflammatory medications, Dr. Walton treated Mr. Ball with physical therapy and miscellaneous injections into the lower spine. Treatment with Dr. Walton continued through April, 1987 without providing significant improvement.

On July 20, 1987 Mr. Ball began treatment with Arthur J. Pistey, D.C. Ultimately, in late September, 1987, Mr. Ball was able to return to work as a truck driver for Allen-Rogers Corporation.

In June, 1988, Mr. Ball sustained another injury to his lower back/hip when he fell off a truck. Along with causing a large bruise to his hip area, this accident significantly exacerbated Mr. Ball's previous condition. Treatments for this

2

second injury were provided at Lakes Region Hospital and, on an ongoing basis with Dr. Pistey. Efforts to return to work in the fall of 1988 were unsuccessful and ultimately Mr. Ball was forced to leave his job in early November, 1988. Since that date Mr. Ball has continued to be unemployed due to his ongoing back/hip problems. Mr. Ball had been employed by Allen-Rogers as a truck driver for approximately 25 years.

In an attempt to overcome the limitations imposed by the second injury, during the spring of 1989 Mr. Ball became actively involved in a vocational rehabilitation program offered through Liberty Mutual Insurance Company. These efforts included a twelve month in-patient program at Liberty's facility in Boston, Massachusetts. The purpose of this rehabilitation effort was to increase Mr. Ball's ability to sit so as to enable him to return to work driving a vehicle. At the conclusion of the program the maximum period of time that Mr. Ball could comfortably drive a vehicle continued to be extremely limited. The physician at the rehabilitation center, Alan Weiner, M.D., concluded that further efforts were futile. Additionally, Dr. Weiner concluded that the injury of June, 1988 had significantly increased the extent of disability as compared to the original injury of February, 1987.

Mr. Ball filed for disability insurance benefits under Title II of the Social Security Act on January 19, 1993. After

3

receiving an initial denial and a denial of his Request for Reconsideration, a hearing was held on August 19, 1993 before Administrative Law Judge (ALJ) William J. Wilkin. By decision dated November 9, 1993, the ALJ ruled that Mr. Ball was not disabled as defined under the Social Security Act. A timely request for review was filed by the claimant with the Office of Hearings and Appeals on January 11, 1994, and this request was denied on May 6, 1994.

Plaintiff now alleges that the decision of the Secretary, through the ALJ, represents an abuse of discretion and an error as a matter of law.

DISCUSSION

An individual seeking social security disability benefits will be considered disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less that 12 months." 42 U.S.C. § 416 (i)(1)(A)(Supp. V 1981); 42 U.S.C. § 1382c(a)(3)(A) (1976); See Faford v. Shalala, 856 F. Supp. 13 (D.Mass. 1994). The Secretary of Health and Human Services will find a claimant disabled only if the claimant's

4

physical or mental impairment or impairments are of
such severity that he is not only unable to do his
previous work but cannot, considering his age, edu-
cation, and work experience, engage in any other kind
of substantial gainful work which exists in the
national economy, regardless of whether such work
exists in the immediate area in which he lives, or
whether a specific job vacancy exists for him, or
whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (1994).

The Secretary utilizes a five-step sequential evaluation,

set forth in 20 C.F.R. §§ 404.1520 and 416.920, in considering

disability claims. This five-step procedure is summarized as

follows:

First, the Secretary considers whether the claimant is
currently engaged in substantial gainful activity. If
he is not, the Secretary next considers whether the
claimant has a "severe impairment" which significantly
limits his physical or mental ability to do basic work
activities. If the claimant suffers such an impair-
ment, the third inquiry is whether, based solely on
medical evidence, the claimant has an impairment which
is listed in Appendix 1 of the regulations. If the
claimant has such an impairment, the Secretary will
consider him disabled without considering vocational
factors such as age, education, and work experience;
the Secretary presumes that a claimant who is afflicted
with a "listed" impairment is unable to perform
substantial gainful activity. Assuming the claimant
does not have a listed impairment, the fourth inquiry
is whether, despite the claimant's severe impairment,
he has the residual functional capacity to perform his
past work. Finally, if the claimant is unable to
perform his past work, the Secretary then determines
whether there is other work which the claimant can
perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).

5

The scheme of the Act places a very heavy initial burden on the claimant to establish the existence of a disabling impairment. Bowen v. Yuckert, 482 U.S. 137, 146-47 (1987); Santiago v. Secretary of HHS, 944 F.2d 1, 5 (1st Cir. 1991). To meet this burden, the claimant must prove that his impairment prevents him from performing his former type of work. Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985) (citing Goodermote v. Secretary, 690 F.2d 5, 7 (1st Cir. 1975)). The claimant is not required to establish a doubt-free claim; the initial burden is satisfied by the usual civil standard, a "preponderance of the evidence." See Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D.Mass 1982); see also 1 Unemployment Insurance Reporter (CCH) 12, 679 (April 15, 1985). Further, the claimant must show a "medically determinable" impairment, and only in a rare case can this be shown without medical evidence. Thompson v. Califano, 556 F.2d 616, 618 (1st Cir. 1977) (citing 42 U.S.C § 423(d)(1)(A)); Ramirez v. Secretary of Health, Education and Welfare, 528 F.2d 902, 903 (1st Cir. 1976).

Once a plaintiff has shown an inability to perform his previous work, the burden shifts to the Secretary to show that there are other jobs in the national economy which the claimant can perform. Vazquez v. Secretary of Health and Human Services, 683 F.2d 1 (1st Cir. 1982). In assessing a claim for disability,

6

the Secretary shall consider objective and subjective factors, including the following; (1) objective medical facts; (2) claimant's subjective evidence of pain and disability as testified to by the claimant or other witness; and (3) the claimant's educational background, age and work experience.  See e.g., Avery v. Secretary of Health and Human Services, 797 F.2d 19 (1st Cir. 1986); Goodermote, 690 F.2d at 6.  If the Secretary shows the existence of such jobs, then the overall burden remains with the claimant.  Hernandez v. Weinberger, 493 F.2d 1120, 1123 (1st Cir. 1974); Benko v. Schweiker, 551 F. Supp. 698, 701 (D.N.H. 1982).

A finding by the Secretary that a claimant has not shown disability is conclusive if supported by substantial evidence. 42 U.S.C §§ 405(g), 1383(c)(3); Ortiz v. Secretary of HHS, 955 F.2d 765, 769 (1st Cir. 1991).  Substantial evidence is:

> "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). "[I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." NLRB v. Columbian Enameling & Stamping Co., 306 U.S. 292, 300 (1939).  This is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusion from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.

Consolo v. Federal Maritime Com., 383 U.S. 607, 620 (1966) (citations omitted).

Although it is for the Secretary to weigh and resolve

conflicts in the evidence, <u>Burgos Lopez v. Secretary of Health &</u> <u>Human Services</u>, 747 F.2d 37, 40 (1st Cir. 1984)(citing <u>Sitar v.</u> <u>Schweiker</u>, 671 F.2d 19, 22 (1st Cir. 1982)), the court is empowered to scrutinize the record as a whole and determine the reasonableness of the decision. <u>Ortiz</u>, 955 F.2d at 769. Upon review, a court must be content that the claimant has had a "full hearing under the Secretary's regulations and in accordance with the beneficent purposes of the Act." <u>Gold v. Secretary of</u> <u>Health, Education and Welfare</u>, 463 F.2d 38, 43 (2d Cir. 1972); <u>Hankerson v. Harris</u>, 636 F.2d 893, 895 (2d Cir. 1980).

With the above principles in mind, the court reviews plaintiff's motion to reverse the decision of the Secretary.

In considering the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920, it is clearly evident that at the time of the administrative hearing Mr. Ball was not currently engaged in substantial gainful activity. Also apparent at the time of the administrative hearing, Mr. Ball met the special earnings requirements of the Act. Finally, from the reports and evaluations performed by the various medical specialist, it is evident that Mr. Ball's conditions was not of the caliber resembling an "automatically disabling" condition under the Act. Therefore, reviewing the evidence and arguments presented, the court opines the ALJ's conclusion that "the

8

medical evidence establishes that the claimant has a severe impairment of chronic sacroiliitis but does not have an impairment or combination of impairments listed in or medically equivalent to one listed in Appendix No. 1, Subpart P, regulations No. 4 (20 CFR 404.1525 and 1526)" is supported by substantial evidence.

In continuing with his evaluation, the ALJ next considered Mr. Ball's residual functional capacity (RFC) and whether this RFC enabled Mr. Ball to perform jobs in the regional and national economies. Pertinent to the ALJ's consideration of Mr. Ball's RFC (step 4 of the sequential evaluation), the ALJ concluded that Mr. Ball,

> has the residual functional capacity to perform the exertional and nonexertional requirements of light work except for lifting and/or carrying more than 25 pounds; sitting, standing and/or walking for more than one hour at a time; performing frequent pushing, pulling, bend-ing, squatting, crawling, climbing and reaching over the shoulder and performing extensive driving of auto-mobile equipment.

Based on this RFC determination, the ALJ then concluded, based on step 5 of the sequential evaluation, that although Mr. Ball's

> limitations do not allow him to perform the full range of light work, . . . there is a significant number of jobs in the national economy which he could perform. Examples of such jobs are as a delivery driver and a chauffeur; these jobs exist in the national economy in numbers of over 375,000.

It is the step 4 and step 5 conclusions, by the ALJ, which plaintiff maintains is an abuse of discretion or error as a matter of law. As stated by the plaintiff, "it is clear that the weight of the evidence is contradictory to the findings laid out in the [ALJ's] decision." Particularly, "[t]he evidence introduced indicates pain associated with a severe medical impairment." "Because the ALJ gave no explanation as to why some evidence was not found to be credible and failed to evaluate plaintiff's subjective pain with due consideration of all factors", the decision of the ALJ denying Social Security benefits is the product of an abuse of discretion and an error of law. Thus, the plaintiff contends, not only did the ALJ err in discounting subjective complaints of pain at step 4 of the sequential evaluation, but the ALJ also erred in discounting the complaints at step 5 of the evaluation.

It is beyond peradventure that a claimant's subjective complaints of pain are to be considered if the claimant has "a clinically determinable medical impairment that can reasonably be expected to produce the pain alleged." Da Rosa v. Secretary of Health and Human Services, 803 F.2d 24, 25 (1st Cir. 1986) (citing Avery v. Secretary, 797 F.2d 19, 21 (1st Cir. 1986)); see 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1529. Further, upon the recognition of a medical impairment, the effects of a

10

claimant's pain must be considered at each step of the sequential evaluation process. 20 C.F.R. § 404.1529(d). "While medical history and objective medical evidence are usually reliable indicators from which to draw reasonable conclusions about the intensity and persistence of pain and its effect on work capacity, it is recognized that situations do exist in which an individual's reported symptoms of pain suggest functional restrictions of a greater degree than can be demonstrated by objective medical evidence alone." Morin v. Secretary of Health and Human Servs., 835 F. Supp. 1414, 1421 (D.N.H. 1992); Avery, supra, 797 F.2d at 23; 20 C.F.R. § 404.1529(c)(3). "A claimant's symptoms, including pain, will be determined to diminish capacity for basic work activities to the extent that the alleged functional limitations and restrictions due to those symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." Morin, 835 F. Supp. at 1421-22; 20 C.F.R. § 404.1529(c)(4); 42 U.S.C. § 423(d). In determining the appropriate weight to be given allegations of pain, the First Circuit has stated that "complaints of pain need not be precisely corroborated by objective findings, but they must be consistent with medical findings." Dupuis v. Secretary of Health and Human Services, 869 F.2d 622, 623 (1st Cir. 1989).

Against the aforementioned legal backdrop, in the instant

11

case the ALJ states that the "claimant's testimony and allegations regarding subjective complaints, including pain, are not fully credible . . . ." Tr. 36. Presumably, the ALJ draws this conclusion through assessing Mr. Ball's activities of daily life, including Mr. Ball's ability to drive a 35-mile distance, ability to walk for one-half mile at a time, and ability to watch television, play cards, and visit with friends. Consequential to the credibility determination, the ALJ then proceeded to characterize Mr. Ball's RFC in terms of "light work", with limitations involving lifting, sitting, standing or walking for more than one hour at a time, and frequent pushing, pulling, bending, squatting, crawling, climbing, etc. Tr. 37

However, an actual review of the administrative transcript reveals Mr. Ball's physical ability and daily activities are far more limited than that portrayed by the ALJ. On questioning by his lawyer and the ALJ, Mr. Ball testified that his pain sharply increases with even small degrees of physical movement or exertion. Tr. 63-64. Further, due to the severity of his pain, Mr. Ball testified he makes use of a TENS Unit, but even with such use he is forced to lie down two or three times a day, for anywhere between one-half to an entire hour at a time. Tr. 63-64, 78. Mr. Ball further testified, without any form of ambiguity, that he is unable to drive long distances without the

12

onset of severe pain (Tr. 66), cannot do yard work or enjoy long-time hobbies like hunting and fishing (Tr. 67-68), has to have repeated help from his wife to tie shoe laces (Tr. 78, 82), and is limited in his ability to do other chores (shopping (Tr. 65-66) and cooking (Tr. 65)). In fact, during the course of the administrative hearing, Mr. Ball had to stand-up due to back pain experienced by sitting for a time. Tr. 69. Finally, as indicia of the severity of his condition, Mr. Ball testified that when the pain becomes so unbearable during the course of the night when he attempts to sleep, he is obligated to wake up his wife to roll him over because he is unable to change positions on his own. Tr. 78.

In addition to claimant's testimony, medical records and evaluations support Mr. Ball's complaints of pain and the severe limitations associated with the pain. A report, prepared by Arthur J. Pistey, D.C. on December 12, 1990, states that

> [a]t this time we must assume that Mr. Ball suffers
> from chronic severe sacroiliitis which is non-remit-
> ting. Attempts to drive only exacerbate his condition.
> The passive therapies that I provide him at this time
> are only palliative. . . . Doctors of several speci-
> alties have examined him, all related diagnostic proce-
> dures have been performed and no one has been able to
> alleviate Mr. Ball's condition.

Tr. 268.

Further, a Preliminary Vocation Assessment Report compiled

13

on July 7, 1992 by Rehabilitation Services Associates, provides
the following information:

> In the course of a 24-hour day, Mr. Ball spends
> approximately 15 hours lying down, four hours sitting,
> and five hours standing or walking.  He tries to take a
> one-hour walk every day.  He usually drives a little
> each day and cooks a little each day.  Activities
> around the house which he did but no longer does in-
> clude vacuuming, mopping, gardening, yard work, snow
> shoveling, and (stacking) cord wood.

> *                          *                          *

> None of the treating or consulting Physicians has
> recommended surgery, physical therapy, or other medical
> treatment.  It is the consensus of these Physicians
> that the primary method to control Mr. Ball's pain is
> to limit physical activities such as stooping, bending,
> and lifting which exacerbate his pain symptoms.

> *                          *                          *

> The combination of Mr. Ball's vocational handicaps and
> his age virtually preclude the possibility of his
> obtaining and maintaining competitive employment at the
> present time or at any time in the future.

Tr. 280, 281, 283.


While the ALJ's conclusions are entitled to deference, his
decision here, reflecting Mr. Ball's RFC for light work, is not
supported by substantial evidence.  Rather, the evidence supports
the conclusion that Mr. Ball experiences very severe pain, and as
a result of such severity, he is significantly dependent upon
others in order to perform even the most rudimentary tasks.

In addition to failing to factor in complaints of pain

14

during the RFC determination, the ALJ also failed to characterize or properly reflect the subjective pain complaint into his various hypotheticals posed to the VE during step 5 of the sequential evaluation. Principally, in the first two hypotheticals posed to the VE, the ALJ assumed a light work function (Tr. 86), light lifting, and a limitation whereby an individual would not have to stand, stoop, or bend over the work for more than a few minutes and sitting would be limited to one hour or less. Tr. 86-89. No mention was made in these first two hypotheticals of a limitation deriving from pain. Based on these hypotheticals, the VE concluded an individual with such limitations would be able to work as a delivery driver or chauffeur.

In the third, fourth and fifth hypotheticals, the ALJ included a variety of limitations reflective of Mr. Ball's condition, but here again failed to incorporate any restrictions deriving from pain. Tr. 90-94.

In the last hypothetical posed to the VE, the ALJ for the first time, and only briefly, posited questions reflecting the necessities of rest, reclining or lying down as a result of pain. Tr. 94. Interestingly, in response to this hypothetical in which pain was presented as a limitation, the VE testified that there would be no jobs available or able to be performed by an individual who had to rest, recline or lie down after a period of two

15

hours at a time. Tr. 94. Perplexing enough, in his ultimate findings, the ALJ nonetheless determined that,

> [a]lthough the claimant's limitations do not allow him to perform the full range of light work, using the above-cited rules as a framework for decision-making there are a significant number of jobs in the national economy which he could perform. Examples of such jobs are as a delivery driver and

chauffeur . . . .

Tr. 36, 37.

To recapitulate, the court finds extremely puzzling that portion of the ALJ's decision finding Mr. Ball capable of working as a delivery driver or chauffeur, when, in a prior stroke of the word processor keys, the ALJ determined Mr. Ball was not able to perform "extensive driving of automobile equipment." Tr. 37.

Even more baffling to the court is the ALJ's complete disregard for Mr. Ball's subjective complaints of pain, when during the course of the administrative hearing, the claimant, his wife, as well as various doctors, made repeated reference to pain and the effects deriving therefrom. In light of this consequential misstep by the ALJ, it follows that the ALJ's decision finding Mr. Ball "not disabled" is not supported by substantial evidence.

Having determined that the ALJ's decision is not supported by substantial evidence, the next consideration is whether a remand for further consideration is warranted or whether a

16

complete reversal is appropriate.

The fourth sentence of 42 U.S.C. § 405(g) empowers a court to enter a judgment reversing the Secretary's decision, with or without remanding the cause for a rehearing. Melkonyan v. Sullivan, 501 U.S. 89, 98, 111 S.Ct. 2157, 2163, 115 L.Ed.2d 78 (1991). While this court concludes that the Secretary's denial of benefits to Mr. Ball is not supported by substantial evidence, the court is also cognizant that no practical purpose would be served by remanding the cause for further proceedings. Fowler v. Bowen, 866 F.2d 249, 253 (8th Cir. 1989) ("When the record is overwhelmingly in support of a finding of disability, there is no need to remand to the Secretary for further consideration"); Morin, 835 F. Supp. at 1428 (quoting Brown v. Bowen, 682 F. Supp. 858, 862 (W.D.Va. 1988) ("Nor, in the court's view, would remand be in keeping with the `benevolent purpose of the Social Security Disability Reform Act of 1984 . . . which is to pay benefits to qualifying disabled persons and not just enable them to file claims, appeal adverse decision and litigate perpetually in court.'")

In addition to the well-recognized benevolent purpose of the Act, see Morin, supra, this court is mindful that the testimony of the VE, in essence, provides the final brush-stroke to the painting delineating reversal. Succinctly, the VE's testimony

17

expressed that a person experiencing pain, to such a severe degree the he is required to make frequent stops while driving in order to walk and alleviate such pain, would not be able to successfully perform the jobs of chauffeur and delivery driver. Tr. 94, 96-97. As the VE's testimony reflects the limitations or physical ability retained by Mr. Ball, the Secretary's decision finding Mr. Ball not disabled and capable of driving automotive equipment must be reversed.

CONCLUSION

For the reasons stated previously, plaintiff's motion is granted. The Secretary's decision is reversed, and the case is remanded, pursuant to sentence four of 42 U.S.C § 405(g), to the Secretary for the limited purpose of awarding benefits to Mr. Ball in the appropriate amount based on his 1993 application for the same. The court will enter judgment accordingly.
April 24, 1995

                                  _____
                                  Martin F. Loughlin
                                  Senior Judge

Frederick E. Upshall, Jr., Esq.
David L. Broderick, Esq.

18